Good morning. My name is Robert Gibbs for Petitioner here. I'm just recently brought into this case by Mr. Labrador, the Petitioner's counsel, who wasn't able to be here. I'd like to reserve two minutes for rebuttal, and I'll do my best to try to remember that as I work through this. This case presents a straightforward issue of statutory construction regarding the meaning of Section 210A2 of the Immigration Nationality Act, that is the provision for adjustment to permanent resident status under the Special Agricultural Worker Amnesty Program. Can I ask you a question? Sure. Under Section 1227, when the word adjustment of status is used, does that refer only to an alien's adjustment to lawful permanent status or not any other form of adjustment? I'm sorry. In 1227, what's that provision, Your Honor? I'm not familiar with that one. Well, if you can't answer it, that's okay. The Mr. Perez-Enriquez adjustment was pursuant to the SAW program, the shorthand. That was a two-stage process. It's a mandatory program, unlike almost every other form of immigration relief. The first stage, the statute says 210A1, the applicant shall be adjusted if he shows that he's been living here, he makes an application, and he's worked 90 days in seasonal agricultural work. And in that second stage, 210A2, is automatic. It says the applicant shall be adjusted to permanent resident status on this following schedule. And there's no provision therein on the automatic adjustment section. The second stage, to consider whether or not the person or no requirement that the person demonstrate admissibility for purposes of the 212 bars to admission. Mr. Enriquez's temporary residence application was approved. So if they blew up the Twin Towers between the first adjustment and then the permanent, then they we have to still give it to them? With one – there's one exception. And the Board of Immigration Appeals describes this as a permissive exception. Under 210A2, it says the Attorney General may terminate the first-stage status prior to the automatic adjustment date in the event of certain disqualifying criminal convictions, for example. But it's permissive. It's may. And the Board of Immigration – But what happened here? The Attorney General did not exercise that discretion to terminate his status prior to the 12190 automatic adjustment date. But the government had a terrific problem with all of these people who came in under this program to try and keep track of what's going on here. Well, they sure did. But Congress wrote the statute in a particular way, and the government has to follow the statute. In this case – In what way did they write it in a particular way? Well, I think it's pretty clear, Your Honor, that the language and the Board of Immigration Appeals, as it interpreted the statute, has said in Jimenez-Lopez, they specifically said, 210A2 adjusts the status of an alien granted temporary status under Section 210A1 to that of a lawful permanent resident on the basis of a fixed schedule without regard for the alien's admissibility at that time. And that line was again quoted by Board Member Holmes in Masry. The key difference between this case and the result that explains the result between this case and Jimenez-Lopez is in Jimenez-Lopez, although there was an intervening conviction, as in this case, Mr. Jimenez-Lopez had gone to Mexico and was seeking to reenter the United States when they caught him with marijuana in his car. So he was seeking to enter. And so the grounds of admissibility then were applied to him properly because he was seeking to enter. He wasn't admissible. The Board in Jimenez-Lopez found that the subsequent permanent resident adjustment didn't cure that problem, just as it wouldn't cure a problem if somebody as a permanent resident sought to enter with marijuana in his car. He would be inadmissible as well and would be properly barred. But the key thing in Jimenez-Lopez is that they said the second adjustment, the adjustment to permanent residence, is automatic, it does not constitute an entry, and the grounds of admissibility do not apply for that routine automatic adjustment. In Jimenez-Lopez, they weren't applying the grounds of admissibility to his eligibility to adjust. They were applying it to his entry when he tried to come in with the marijuana. This client did not enter or seek to enter the United States after he got his temporary residence status in 1988. Right. But both of you have focused on at the time of adjustment status, on those words. And Enriquez argues that he completed his application on November of 1988. That's when he got temporary residence status. And the government responds by arguing that as set forth in 8 CFR 210.5A2, it has determined that Enriquez's adjustment to permanent status occurred in December 1990, and that the court should defer to the agency's determination of when that would apply. Well, Jimenez-Lopez responds to that. Jimenez-Lopez says the adjustment at the first stage in 1988 is the only time when a determination of admissibility, which is another way of saying do the 212 bars that ultimately were the issue here, apply, and that Jimenez-Lopez said it only applies at Stage 1. It does not apply at Stage 2. The board in several unpublished decisions, which are not precedential but confirm our reading of this, in Herrera-Mendez and Tellez-Gomez, both considered this specific question for somebody where there's an intervening criminal conviction before the automatic adjustment. And the question there was, is the person eligible for 212c relief, which the next question is, because was his permanent residence proper? And in both cases, the board said, because there's not an entry, because that isn't an admission at the second adjustment, the permanent residence status that was automatically granted was properly issued, and the person was eligible to seek 212c relief. That's what's at stake, really, in this issue, because if this ground of removability was improperly applied, as we argue it was and we believe the board should have so ruled, then he would be eligible, would have been eligible to seek 212c relief if the board referred him on as an ag felon or as someone with a drug conviction. He has a strong 212c application because he's been married. He's got three kids. He's got a job for the last seven years with the Union Pacific Railroad. He has and would have a strong 212c application, but because of the way the government chose to plead this, we think consciously, he was ineligible to seek that relief. The government's argument would be to get 212c relief, you have to show seven years of lawful permanent residence. Your permanent residence wasn't lawful. Therefore, you don't have the seven-year clock going. So that's what's really at stake in this case. The government raised in its brief a jurisdictional question referring to Alvarez. This Court has held both there and in, frankly, in a more recent case, Gonzalez-Valerio, which is in the 28J letter I just gave you. If you want to reserve two minutes, you're basically there. Okay. Anyway, in Gonzalez, it said, the court there held the removal order for a jurisdiction bar to apply of 242a, 2c. The removal order must specify a crime covered by the INA as the ground of removal. That was not the situation here. Thank you. May it please the Court. My name is Isaac Campbell, and I represent the government in this matter. Your Honors, there are three responses I have to Petitioner's counsel's argument. First, I would like to address the issue with respect to the lack of subject matter jurisdiction. In the brief, I would also note a correction. On page six of the brief, it refers to 8 U.S.C. 1182, and it should be 1252 that talks about the jurisdictional bar, which provides that no court shall have jurisdiction to review a final order of removal whose removal will, by reason of having committed a crime, cover here. In this case, the language of the statute on that is pretty clear, and it is the government's position that, first of all, as a procedural matter, this court would lack subject matter jurisdiction. But secondly, looking at the merits of the case, I think, first of all, on its face, there is something disturbing about Petitioner's counsel's argument, as Your Honor has raised. If an individual, according to Petitioner's counsel, blew up the World Trade Center and committed a murder and did anything, at this point, what Petitioner's arguing is that, well, that really doesn't matter, that somehow this transition is automatic, and so the court cannot, I mean, that issue cannot be looked at. And there is nothing, Petitioner doesn't provide anything that would suggest that that was the intention of Congress when drafting the statute. We would note that the two cases the immigration judge relied on, I'd like to turn to in addressing this issue. Jimenez-Lopez, Petitioner's counsel, has tried to distinguish this case. Well, first of all, that there was an important proposition coming out of the Jimenez-Lopez case in which the, in which it was found that the determination, that the automatic adjustment to legal permanent resident status was not a new determination, and therefore, it was not a waiver of his prior conviction. I would also turn the Court's attention to the Monet case, which the immigration judge cited, and what came out of that case is that the salient issue is that, the Court held in that case is that what is essential is lawful status, not regular procedure. In terms of looking at whether or not Petitioner was admissible. In this case, the statute that is cited in question provides that if a crime was committed, Petitioner would be ineligible. I mean, admissible. Petitioner does not contest that, and indeed, Petitioner seeks to make a procedural argument that somehow suggests that because Congress allows for the automatic, for the temporary status to be converted to legal permanent resident status automatically, that somehow he cannot be found admissible, and simply there is not a case law to support that. Excuse me, this may be a dumb question, but why doesn't the statute apply, even if you are a permanent resident, you committed a narcotics offense, why doesn't the statute apply? The statute does provide that that can happen, and in fact, that was the initial charge. However, the charge was changed because the, because it is, the admissibility is not guided simply because one can, the temporary status automatically converted to permanent status, the admissibility can still be viewed. An individual can be deemed inadmissible prior to that happening, and so they, as a legal permanent resident, there is a statute and a provision to remove the Petitioner in this case. However, it was changed because this, quite frankly, properly applies to the alien, and because he committed the crime before the transition, he could be deemed inadmissible. We note, too, that one of the things that was talked about before. So even, so what you're saying is even if you interpret the statute the way that the appellant wants this to, you still could proceed against him. Yes, that's my understanding. However, I think that this is the appropriate charge under the circumstances, given that as the Petitioner set up the history, because on November 88th he had that temporary residential status granted, and the conviction order was in March of 1989, before the legal permanent resident status was granted over a year later, that this would be the appropriate charge, and that Petitioner is not, can still be deemed to be inadmissible. And as stated, well, so in summation one, we would argue first that there is the clear lack of subject matter jurisdiction. What Petitioner's counsel attempts to do is to look at the statute and say that the absence of particular language somehow suggests that the statute should be construed. In this particular case, the statute is very clear, and we would argue that there is not subject matter jurisdiction. Secondly, with respect to the interpretation of the statute, it is the government's position that it should be afforded Chevron deference for the agency's construction of the statute. And then finally, with respect to looking at the merits of the case, it is, finally, two points on that issue. First, that looking at, utilizing common sense even in trying to interpret the statutory provision, it is simply nonsensical despite Petitioner's counsel's assertion to the contrary that somehow Congress intended that, although there would be an automatic provision for transition from temporary residence to permanent residence, that somehow no matter what was done, that if it was done before the transition that, you know, Congress intended that, it just wouldn't matter. That simply is nonsensical, and Petitioner's provided no evidence to the contrary. And secondly, even in looking at what occurs when an individual is given, for example, his green card when he makes a transition, we know that it is a date of obtaining a legal permanent residence status, for example, that is noted on the green card, and it is not something that's so automatic that if one was simply a temporary resident, if, as Petitioner's counsel's argument argues, it is simply something that is automatic, it would date back. But even then, that's not the issue that is addressed. And so this is the proper charge, and Petitioner's petition for review should be denied. Let me ask you a question. Sure. All right. If the SAW project is a two-step procedure, correct? Yes. Well, if you can tell me the steps that you mean. Well, first, the alien files an application for temporary residence status. Yes. And second, after passage of a period of time, the INS adjusts to LPR status, or? The alien would adjust. Yes. Yes, Your Honor. Okay. Now, in the second step, are both an adjustment of status, or is only the second step an adjustment of status? If I'm understanding your question correctly. Well, when you the word adjustment of status, is it used in 1227? Yes. What does that mean? As a general proposition, it means. Does it mean every time you change someone, or does it only mean to the permanent status? Well, I would argue that it means that whenever there is a change, so that, for example, if one is, has no, if one is an alien with no rights whatsoever and one becomes, has temporary residence status, arguably one has adjusted one's status, when one makes the change now to legal permanent residence and now has different rights, you know, et cetera, then one would also adjust at that interval as well. So that if I'm understanding your question correctly, my response would be, as a general proposition, adjustment would occur at whatever interval the status changes. So it doesn't only refer to an adjustment to lawful permanent residence? Or does it refer to any form of adjustment of immigration status? I just want to understand, does that word have a common meaning in 1227? Does it only mean adjustment to lawful permanent residence? Or does it mean any time you change their rights and their situation? I would argue the latter, that it means any adjustment. I would want to look at 1227 again to be completely sure, to look at the regulation. But in responding to your question, I would assume that it would be whenever there is a change. Okay. Thank you. Just very quickly. The government's hands were not tied in this case. They could have terminated him. They had over a year to do that. If the Attorney General chose to do that, it could have terminated him. As he, as counsel admits, even later than that, they could have put him in deportation proceedings on a different charge, which they had charged him with here. Those could have, in my view, probably been established, and he could have been deported on those grounds. The service chose to withdraw those charges in favor of this one to deprive him of the ability to seek a waiver. In terms of the deference argument, it seems to me it's only appropriate to have deference if there's a reasoned and appropriate decision of the agency. Here we've shown that there are at least four unpublished decisions of the agency, plus Jimenez-Lopez, that take a contrary view to what's being argued here today. The Monet decision that they rely on in terms of admissibility at the time of adjustment is a 245, a standard adjustment case. As the Board said in Jimenez-Lopez and in these other cases, the 210 permanent residence adjustment is unique in immigration law. And that's true. There's no other adjustment process that I can think of that does not have a requirement that you show that you're admissible under the provisions of 212, the grounds of exclusion. So all the case law that's relied on here in terms of the normal adjustment process and whether you're admissible and whether it's appropriate is really probably not relevant in this unique statutory provision, which is mandatory, not discretionary, and where the grounds of admissibility are specifically excluded, left out of the statute, and the Board has agreed that the grounds of admissibility are not applicable at this stage. Under that reading of the statute, the government loses. This Court should reverse and vacate the removal order in this case. Thank you for your time. Thank you. The matter of Jaime Perez Enriquez v. John Ashcroft will stand submitted. This concludes our calendar for today.
judges: Hall, Callahan, Bertelsman